Claude M. CARPENTER, Jr., Petitioner,

v.

Sherman H. CROUSE, Warden, Kansas State Penitentiary, Lansing, Kansas, Respondent.

No. 3944 H.C.

United States District Court
D. Kansas.

Finding of Fact and Conclusion of Law
July 29, 1966.

On Motion to Set Aside Judgment
March 23, 1967.

Order Correcting Findings and Conclusions April 27, 1967.

Clifford L. Malone, Wichita, Kan., for petitioner.

Daniel D. Metz, Asst. Atty. Gen., Robert C. Londerholm, Atty. Gen., Topeka, Kan., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TEMPLAR, District Judge.

The above entitled cause came on regularly for trial and the Court having duly considered the evidence and being

fully advised in the premises now finds the following:

## FINDINGS OF FACT

I. Petitioner was charged, tried by a jury, and convicted of burglary with explosives in the District Court of Reno County, Kansas, which verdict was rendered on the 17th day of November 1960. A Motion for new trial was filed by petitioner, which was heard and overruled on the 9th day of December 1960. On said date petitioner was sentenced by said Court to the state penitentiary for a period of not less than ten nor more than thirty years. He is presently confined in the Kansas State Penitentiary.

II. Pending trial of the Reno County charge petitioner was released on bond. Thereafter, but prior to the time of trial of the Reno County charge the petitioner was charged in the District Court of Sedgwick County, Kansas, with third degree burglary, possession of burglary tools, second burglary and larceny.

III. On March 22, 1961, the petitioner was convicted by a jury in Cases No. B–5245 and B–5278 (consolidated) in the District Court of Sedgwick County, Kansas, of burglary in the third degree, possession of burglary tools, burglary in the second degree, and larceny. On March 31, 1961 the Court sentenced him to concurrent terms of five to ten years for second degree burglary and not more than five years for larceny. Consecutive to those two sentences, the Court sentenced him to concurrent terms of not more than five years for third degree burglary and one to three years for possession of burglary tools.

IV. The petitioner's sentences have not been commuted by the Governor of Kansas.

V. In this habeas corpus proceeding, the petitioner claims that:

(A) His retained attorney, in collusion with the county attorney of Sedgwick County, betrayed him by dismissing an appeal from his Reno County conviction, and

(B) Evidence introduced against him was the product of an illegal search and seizure.

VI. In September of 1960 the petitioner retained Mr. Earl Clarkson of Wichita to defend him against the charges pending in Reno County and Sedgwick County. Mr. Clarkson received a fee of $1,750 in advance. For this fee, he agreed to represent the petitioner at trial in both counties. It was agreed between the two of them that in the event petitioner was convicted, Mr. Clarkson would continue to represent him for the purpose of doing whatever was necessary to protect his best interests, including an appeal to the Supreme Court of Kansas if this was advisable. It was also agreed between the two of them that the fee of $1,750 would not cover services rendered by Mr. Clarkson subsequent to trial, but that Mr. Clarkson would not require payment in advance for such services.

VII. The Reno County case was tried first. On December 13, 1960 three days after the petitioner was sentenced in that case, Mr. Clarkson filed a notice of appeal. Mr. Clarkson also ordered a transcript and made application to the Supreme Court of Kansas for a stay of execution of the sentence pending appeal. On December 19, 1960, the Supreme Court entered its order staying execution of the sentence upon filing of an appeal bond by the petitioner. Bond was filed and the petitioner was permitted to go free pending his appeal. On March 8, 1961, while the charges in Sedgwick County were still pending, Mr. Clarkson filed a motion in the Supreme Court to continue the hearing of petitioner's appeal, which had been set for early in April 1961. This motion recited as grounds for the continuance that the petitioner had only recently acquired sufficient funds to pay for the transcript of the trial, which was true. Another reason for the motion, not stated in the motion itself, was that the Sedgwick County charges were then pending and were shortly scheduled to come up for trial. On March 8, 1961, the Su-

preme Court ordered the petitioner's appeal continued to the May 1961 session and specified that the case would be dismissed if the petitioner's abstract and brief were not filed by April 8, 1961.

VIII. On March 14, 1961, the Sedgwick County case came on for trial. This trial lasted until March 22, 1961, when the jury returned a verdict of guilty on all four counts. After the verdict of guilty in Sedgwick County, it was Mr. Clarkson's opinion that the petitioner had virtually no chance of securing a reversal on all the counts in Sedgwick County, as well as the count in Reno County, that it would be a waste of the petitioner's resources for him to continue with the Reno County appeal; and that it would be better for the petitioner to begin serving his sentences. He so advised the petitioner. The petitioner agreed with this view of his situation, accepted Mr. Clarkson's advice, and consented to the dismissal of his pending appeal.

IX. Subsequent to this conviction, but prior to the time of sentencing, Clarkson discussed with the county attorney, Keith Sanborn, the subject of the sentence petitioner was to receive. In an attempt to discourage the county attorney from introducing evidence of the Reno County conviction and invoking the habitual criminal act, Mr. Clarkson stated that he and the petitioner did not feel that it would be to the petitioner's advantage to pursue the Reno County appeal. This statement was volunteered by Mr. Clarkson and was not made in response to any request by the county attorney for any kind of assurance that the appeal would not be pursued. Mr. Clarkson was not requested to, and did not, promise the county attorney that he would drop the Reno County appeal.

X. Sentence was imposed in the Sedgwick County case on March 31, 1961. At this time it was definitely agreed between Clarkson and the petitioner that an appeal from petitioner's convictions would not be to his benefit and that instead petitioner should use his resources to secure parole or clemency later. The petitioner was then taken to the penitentiary. On April 7, 1961, he wrote to Clarkson from the penitentiary, thanking him for his services, commending him for the quality of these services, and stating that he would like to retain him in the future for the purpose of obtaining executive clemency.

XI. Clarkson did not file an abstract and brief in the Reno County appeal. On April 10, 1961, the state moved to dismiss this appeal on the ground that the abstract and brief had not been filed by April 8, 1961, as required in the court's previous order. This motion was granted and the Supreme Court dismissed the Reno County appeal on April 12, 1961. The mandate of the order of dismissal was received by the Reno County District Court in the first part of May 1961.

XII. Sometime subsequent to the above events, the petitioner changed his mind about the advisability of pursuing appeals from his convictions. Petitioner prepared in longhand and filed pro se a notice of appeal in the District Court of Sedgwick County, Kansas from his conviction in that Court. In this appeal petitioner recited that he gave "timely notice of intention to appeal from the judgment entered by the District Court." He did not recite in his notice of appeal that he was appealing from the order overruling his motion for a new trial. Petitioner, through the efforts of his mother, finally retained an attorney in Wichita to present such appeal. An inordinate amount of delay occurred in securing the transcripts and in getting this appeal prosecuted and the same was not determined until the opinion was filed by the Supreme Court on July 10, 1965. Although he at no time wrote to Mr. Clarkson with regard to this matter, his wife and mother did see Clarkson at petitioner's request and told him of petitioner's desire to continue with appeals. Clarkson advised the petitioner's wife and mother to tell petitioner that there was no hope of success in appeal and that it would be a waste of his resources, which should be conserved for the pur-

pose of obtaining a parole or clemency. They relayed this message to the petitioner. In September, 1961, the petitioner, in a letter to his mother, asked her to tell Clarkson that he was not to tamper with his cases any more. At petitioner's request, his mother approached at least four other attorneys with regard to appealing petitioner's convictions. Eventually, Claude Lee of Wichita was retained to prosecute the appeal from the Sedgwick County convictions, and Mr. Lee briefed and argued the appeal. The convictions were affirmed by the Supreme Court on July 10, 1965. (State v. Carpenter, 195 Kan. 162, 403 P.2d 996.)

XIII. The Supreme Court of the State of Kansas affirmed the Sedgwick County convictions. Certiorari to the United States Supreme Court was sought and denied, 382 U.S. 948, 86 S.Ct. 409, 15 L.Ed.2d 356. In his appeal to the Supreme Court of the State of Kansas petitioner contended that he was arrested without a warrant contrary to his Constitutional rights, and that the arresting officers broke into his house without any warrant, conducted an unlawful search and seizure of his premises without a warrant, and obtained evidence from such unlawful search and seizure which was admitted into evidence against him in the trial of such action. all of which are contrary to his Constitutional rights. The Supreme Court of the State of Kansas held that such matters could not be reviewed by it because the appellate procedure in the State of Kansas precluded the review of any claimed trial errors if the appellant did not appeal from the order overruling his motion for new trial, and that a claimed federal right does not preclude the Court from refusing to decide such question in such event. As a consequence, the Supreme Court declined to consider the petitioner's claimed Constitutional invasions.

XIV. On April 12, 1961 the date of the dismissal of the appeal taken by petitioner from his conviction in the Reno County District Court, the petitioner understood and knowingly consented that an abstract and brief would not be filed on or before April 8, 1961 on the advice of his attorney, Mr. Clarkson. No conspiracy existed between Clarkson and anyone else for the purpose of obtaining of causing a dismissal of the appeal.

XV. At all times relevant herein, the petitioner had access to sufficient resources to pay for legal costs and services required for the state court proceedings in which he was involved.

XVI. On September 10, 1963, the petitioner filed a petition for writ of habeas corpus in the District Court of Reno County, attacking his conviction and sentence in that court. (Case No. 14,321). On the same day, this action was dismissed by the court on the ground that it lacked jurisdiction over the petitioner in habeas corpus.

XVII. On December 3, 1963, petitioner lodged with this Court an application for writ of habeas corpus, alleging the conspiracy between his attorney and the Sedgwick County Attorney. Leave to proceed in forma pauperis was denied by this Court on December 4, 1963. Rehearing was denied February 11, 1964, in an order reciting that petitioner had not exhausted state remedies and that the petition stated merely errors not affecting the legality of his detention. Carpenter v. Crouse, No. 3587 H.C. This decision was affirmed by the Court of Appeals on July 9, 1964, in an unreported order stating petitioner had not exhausted stated remedies. (Carpenter v. Crouse, No. 7731.)

XVIII. On May 26, 1965, the petitioner wrote a letter to Judge William Gossage of the District Court of Reno County containing the claims made herein and requesting a hearing thereon. The letter stated that the petitioner had retained a Mr. John K. Leighnor to represent him. This letter was filed as a motion for hearing, pursuant to K.S.A. 60–1507 (Case No. 14,605), and the Clerk of the Court so notified Mr. Leighnor and enclosed three sets of the forms required by Rule 121 of the Supreme Court of Kansas to be prepared in such

cases. On May 27, 1965, the petitioner was notified by Judge Gossage that his letter had been filed and counsel had been notified. These forms were never completed and filed by the petitioner or his attorney. On August 15, 1965, the petitioner wrote to Judge Gossage advising that Mr. Leighnor had been dismissed and Mr. Arthur Snyder was now retained to represent the petitioner. On August 18, 1965, Judge Gossage wrote to the petitioner advising him that if Mr. Snyder was retained he should be contacted and asked to set the matter for trial. The court received no further word from the petitioner or his attorney and on October 5, 1965, Judge James Rexroad of the District Court of Reno County, Kansas, wrote to Mr. Snyder advising that the required forms had previously been sent to his client and not returned as required by Rule 121, that Mr. Snyder had not contacted the court, and that if the petitioner wished to proceed with the matter Mr. Snyder should advise the court when it might expect to receive the forms. No answer was received from Mr. Snyder and on November 9, 1965, the Clerk sent formal notice to Mr. Snyder and the petitioner that the case would be dismissed for lack of prosecution on November 22, unless cause was shown for not doing so. The next day, November 10, 1965, Mr. Snyder wrote to Judge Rexroad advising that he was not retained in the case and requesting removal of his name as attorney. On November 18, 1965, the petitioner wrote to Judge Rexroad advising that Mr. Leighnor had been dismissed because of a disagreement about how to present the case and that he likwise disagreed with Mr. Snyder about the case. On November 22, 1965, Judge Rexroad wrote to the petitioner saying that he presumed the petitioner was now proceeding *pro se,* but was not indigent, and that the dismissal would be delayed ten days. The Judge also enclosed additional forms to be filled out by the petitioner under Rule 121. These forms were not returned by the petitioner to the court; and on De-

cember 3, 1965, the case was dismissed for lack of prosecution.

XIX. On October 14, 1965, the petitioner filed with the Supreme Court of Kansas, an original petition for writ of habeas corpus (Carpenter v. Crouse, No. 44,466). This petition was denied by the court without opinion on October 15, 1965.

XX. The present petition was lodged with this Court on November 15, 1965. On December 8, 1965, the court ordered the petition filed without prepayment of costs and dismissed it without prejudice on the ground that the case was one which properly should be heard and disposed of by the state courts. Subsequently on December 27, 1965, the petitioner filed a motion for reinstatement and for a full and fair hearing to determine the facts. The court considered this as a motion to set aside the order of dismissal and to grant a hearing on the petitioner's allegations. Because of the very serious nature of the petitioner's charges, the court ordered that a rule to show cause be issued with regard to petitioner's contention that he was a victim of fraud, connivance, conspiracy and chicanery practiced upon him by certain members of the bar of this court, the respondent made answer and return; counsel was appointed for the petitioner; and a factual hearing with petitioner present was held in Wichita on May 27, 1966.

XXI. Petitioner asserts that after he was arrested and charged with the Reno County burglary the police officers conducted an unlawful search and seizure of his automobile and of his clothing, and obtained evidence from such unlawful search which was used against him in the trial of the Reno County charge. Petitioner also asserts that there was perjury on the part of the police officers in the trial of the Reno County case as well.

XXII. Petitioner has heretofore filed an original proceeding in habeas corpus in the District Court of Reno County, Kansas, which writ was denied without hearing, and petitioner has filed an orig-

inal writ in habeas corpus in the Supreme Court of the State of Kansas which writ was denied without hearing. A writ of certiorari to the United States Supreme Court was applied for and denied. Petitioner has heretofore filed a writ of habeas corpus in this Court, which was denied and which was appealed to the Court of Appeals. This Court denied relief to the petitioner on the grounds that his remedies under state law had not been exhausted, which ruling was affirmed by the Court of Appeals.

 XXIII. Petitioner has the burden of proof to establish his claims by a preponderance of the evidence.

From the foregoing facts the Court concludes:

 1. Petitioner has not exhausted presently available state remedies with regard to the claims made herein. The denial of his writ of habeas corpus by the Supreme Court of Kansas does not constitute a decision on the merits of his claims, since Sec. 60–1507 provides that the remedy thereunder is exclusive if adequate and effective. Petitioner's two previous applications to the District Court of Reno County did not result in adjudications on the merits of his claims. There is no showing that the 60–1507 remedy in that court, or in the District Court of Sedgwick County is not adequate.

 2. Petitioner has failed to establish by a preponderance of the evidence that a conspiracy existed between his attorney Earl Clarkson and the County Attorney of Sedgwick County for the purpose of denying petitioner an appeal from his Reno County conviction and the Court must conclude that no conspiracy or collusion existed to prevent petitioner from exercising all of his rights under the Constitution of the United States including a right to an appeal from his conviction in the Reno County District Court to the Supreme Court of Kansas.

 3. Until the petitioner undertakes in good faith, through applicable and existing provisions of state law to have adjudicated on their merits, his claims that his detention is presently a result of violation of his federally guaranteed constitutional rights, this Court must deny his petition, discharge the writ and remand the custody of petitioner to the respondent for the reason that he has not exhausted available state remedies. Nor has he shown that these remedies are inadequate or ineffective to obtain the relief he seeks.

It is so ordered.

It is further ordered that a copy of these findings be sent by the Clerk to petitioner, a copy to his attorney and a copy to the Attorney General of the State of Kansas.

On Motion to set Aside Judgment

The above cause comes before this Court on a motion filed January 5, 1967 by petitioner, Claude Carpenter to set aside the judgment and order of this court entered July 28, 1966 in which it was determined, after an evidentiary hearing, that petitioner had not exhausted available state remedies; that petitioner had failed to establish by a preponderance of the evidence that a conspiracy existed between his attorney Earl Clarkson and the County Attorney of Sedgwick County, Kansas for the purpose of denying petitioner an appeal from a conviction of petitioner in a Reno County case; and that until petitioner in good faith undertakes to make available the procedure afforded by the applicable state statutes, this Court would not entertain his petition to determine whether his federally guaranteed rights had been violated.

When the petitioner first filed his petition in this Court, it appeared from the allegations that petitioner had not exhausted available state remedies and this Court entered an order dismissing the petition and action. Thereafter, a motion for rehearing was presented and in this motion a member of the bar of this court was charged with fraud,

chicanery and conspiracy to violate petitioner's constitutional rights.

The Court on January 5, 1966, after considering petitioner's claim that he was a victim of fraud, collusion and conspiracy on the part of members of the bar, including his employed attorney and the prosecuting attorney of Sedgwick County, Kansas, concluded to grant the motion for "reinstatement of the petition and a full and fair hearing to determine the facts."

A competent attorney was appointed by the Court to assist petitioner in presenting his case. This attorney has diligently and skillfully represented the petitioner before this Court. After the evidentiary hearing was concluded, findings of fact and conclusions of law were prepared and filed by the Court, denying petitioner the relief he sought and determining that no conspiracy or collusion existed between the attorneys to deprive petitioner of his right of appeal from any of his convictions.

A petition for rehearing, to amend findings and conclusions and to make additional findings and conclusions was denied by this Court. This petition was denied September 8, 1966 and thereafter on his application, petitioner was granted leave to appeal in forma pauperis. Such appeal was taken.

At the evidentiary hearing before this Court, a report in form of a letter, alleged to have been made by Attorney Clarkson to a committee appointed by the officers of the Kansas Bar Association to investigate charges of improper conduct made against him by petitioner, could not be located though diligent search was made. Clarkson denied having a copy. At the time Keith Sanborn, Esq., prosecuting attorney of Sedgwick County, Kansas, who, it was claimed, had been a party to the fraud and conspiracy perpetrated upon petitioner, was suffering from an illness so serious he could not be subpoened before the Court.

After the appeal had been taken to the Court of Appeals, petitioner filed with this Court the motion referred to as "motion to set aside the judgment" of this Court which this Court directed to be transmitted to the Court of Appeals for consideration. The basis for the motion was newly discovered evidence in form of the report from attorney Clarkson, dated March 10, 1965 to a Mr. Willis Wall, Esq., a member of the committee appointed by the Bar Association of Kansas to investigate this matter. Mr. Wall is now deceased. His death accounts for the difficulty in locating the report. By this time prosecutor Keith Sanborn had recovered his health sufficiently to appear as a witness before the Court.

The Court of Appeals, by its direction of January 30, 1967, ordered the cause remanded to this Court so that petitioner might present his motion to set aside the judgment pursuant to Rule 60(b). In this order the Court of Appeals directed that this Court should certify whether the motion should be denied or granted. Following receipt of the file a further evidentiary hearing was held by this Court on the motion. The Court received in evidence the report of attorney Clarkson to the Mr. Willis Wall, a member of the Bar Association Committee and heard the oral testimony of prosecutor Keith Sanborn. Petitioner Carpenter also testified that the transcript of the record contained many errors which he was permitted to describe; he has also furnished a further statement of errors in the transcript which this Court includes in the record. Attorney Clarkson offered further testimony and deputy prosecutor John B. Wooley testified.

Following this hearing on the motion, the respondent asked leave to file a certified transcript of the proceedings which took place when petitioner was sentenced on his convictions before the Sedgwick County, Kansas District Court. Petitioner has objected to the admission of this transcript and the Court will sustain the objection. The proferred transcript is included as a part of the record. On March 15, 1967 petitioner filed with this Court a "motion to impeach the testimony of witness", referring to

witness Clarkson. Petitioner's attorney filed a request to be permitted to withdraw this motion on behalf of petitioner and this request is granted.

From the evidence now before the Court and the whole record of the case, the Court makes the following:

### ADDITIONAL FINDINGS OF FACT

XXIV. Attorney Clarkson, at the request of the Committee of the Kansas State Bar Association investigating charges made against him by petitioner, wrote to Willis Wall, a member of the Committee, since deceased, the report identified as petitioner's Exhibit "A", dated March 10, 1965. This evidence was not available at the original hearing of this case because it could not be found in the files of Mr. Wall. Afterward it was located among some of his private papers.

XXV. Attorney Clarkson, in this report, clearly stated that:

"The State agreed not to plead the Habitual Criminal Act on condition that I dropped the Hutchinson appeal and on condition that I would not appeal the Wichita cases * * *".

And further:

"On the other hand, if we insisted on appealing and I would not make the agreement with the County Attorney then they would plead the Habitual Criminal Act and he would have eight years and eleven months to serve * * *. On that basis Mr. Carpenter requested me to agree not to appeal and to agree to dismiss the Hutchinson appeal * * *".

And also that:

" * * * Mr. Carpenter * * * agreed * * * we should conform to the State's request to preclude sentencing under the Habitual Criminal Act."

Attorney Clarkson, under oath, denied that such an agreement was actually made, or that the prosecution had ever requested such an understanding with him. He now claims that he was doing everything he could to reduce or keep at a minimum the sentences imposed upon Carpenter; that he and Carpenter had agreed that any appeal taken would be "dead horses" and that he had told the prosecutor he would not appeal if the Habitual Criminal law wasn't applied to his client. He now denies the correctness of the letter report he made to the Bar Association Committee that any agreement existed between him and the prosecution.

XXVI. Prosecutor Sanborn denied specifically and generally that any kind of a deal was made or that any understanding or agreement was entered into with regard to Carpenter's right of appeal or waiver thereof in any case. Sanborn insisted before the sentencing court that Carpenter's sentences be made to run consecutive which would have the effect of a sentence under the Habitual Criminal Act. The sentencing court, on objection to this by Carpenter's attorney, assessed all sentences imposed on him to run concurrently. The deputy prosecutor assigned to the case, corroborated the testimony of Sanborn.

XXVII. The preponderance of the evidence does not establish that the prosecuting attorneys of Sedgwick County, Kansas ever entered into any conspiracy or collusion with Carpenter's attorney to deprive, waive or deny Carpenter a right of appeal from any conviction to which he was subject in the Kansas courts.

XXVIII. The exceptions taken by Carpenter to the Reporter's transcript of the evidence and proceedings is without merit. Carpenter is endeavoring to re-write statements correctly reported to correspond to what he now contends the evidence should have been. His claim is without merit and is insubstantial.

From the foregoing facts the Court concludes:

### CONCLUSIONS OF LAW

All the findings and conclusions heretofore made are reconsidered, approved and adopted. The motion of petitioner (appellant) should be and is denied and this Court now certifies such determination to the Court of Appeals.

ORDER CORRECTING FINDINGS OF FACT AND CONCLUSIONS OF LAW DATED MARCH 23, 1967

The petitioner has filed a motion for an Order Nunc Pro Tunc. In the motion petitioner calls to the Court's attention page 3 line 14 where it states, "Mr. Wall is now deceased. His death accounts for the difficulty in locating the report." The Court now strikes these statements from the Findings.

The petitioner also calls to the Court's attention page 4 lines 22 and 23 where it is stated: "wrote to Willis Wall, a member of the Committee, since deceased." The Court hereby strikes the words "since deceased."

The petitioner also calls to the Court's attention page 6 at lines 1 and 2 wherein it is stated: "assessed all sentences imposed on him to run concurrently." This is hereby changed to read: "assessed all the Sedgwick County District Court sentences imposed on him to run 5 to 10 years and 1 to 5 years consecutively."

The remaining matters alleged by petitioner are considered and are denied.

It is so ordered.